# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

| | |
|---|---|
| KEVIN L. DOUGHERTY, Individually and on Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>vs.<br><br>ESPERION THERAPEUTICS, INC., et al.,<br><br>                  Defendants. | Civ. No. 2:16-cv-10089-AJT-RSW<br><br><u>CLASS ACTION</u><br><br>CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

Lead Plaintiffs Ronald E. Wallace and Walter J. Minett ("Lead Plaintiffs" or "Class Representatives") respectfully move the Court for final approval of the Settlement and approval of the Plan of Allocation.  The terms and conditions of the Settlement are set forth in the Stipulation of Settlement (the "Stipulation") (ECF No. 211).

In support of the motion, Lead Plaintiffs rely on the accompanying Memorandum of Law, the Joint Declaration of Ramzi Abadou and Ryan Llorens, Lead Plaintiffs' declarations, the Declaration of Ross D. Murray, the Stipulation, all of the prior pleadings and papers in this Litigation, and such additional evidence or argument as may be required by the Court.  Proposed orders will be submitted with Lead Plaintiffs' reply submission on or before August 16, 2021.

DATED:  July 19, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP

s/Ellen Gusikoff Stewart

Ellen Gusikoff Stewart
Ryan A. Llorens
Kevin A. Lavelle
Francisco J. Mejia
Ting H. Liu
655 West Broadway, Suite 1900
San Diego, CA  92101
T:  (619) 231-1058
elleng@rgrdlaw.com
ryanl@rgrdlaw.com
klavelle@rgrdlaw.com

- 1 -

fmejia@rgrdlaw.com
tliu@rgrdlaw.com

KAHN SWICK & FOTI, LLC
Lewis S. Kahn
Melinda A. Nicholson
Alexander Burns
Alayne Gobeille
Morgan M. Embleton
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
T: (504) 455-1400
lewis.kahn@ksfcounsel.com
melinda.nicholson@ksfcounsel.com
alexander.burns@ksfcounsel.com
alayne.gobeille@ksfcounsel.com
morgan.embleton@ksfcounsel.com

KAHN SWICK & FOTI, LLP
Ramzi Abadou
580 California Street, Suite 1200
San Francisco, CA 94104
T: (415) 459-6900
ramzi.abadou@ksfcounsel.com

*Class Counsel for Lead Plaintiffs*

THE MILLER LAW FIRM, P.C.
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
Angela L. Baldwin (P81565)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI  48307
T:  (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com
alb@millerlawpc.com
wk@millerlawpc.com

*Local Counsel*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| KEVIN L. DOUGHERTY, Individually and on Behalf of All Others Similarly Situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ESPERION THERAPEUTICS, INC., et al., )<br>)<br>)<br>Defendants. )<br>) | Civ. No. 2:16-cv-10089-AJT-RSW<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

## STATEMENT OF ISSUES PRESENTED

1.     Whether the Court should approve the proposed settlement of this securities class action, which involves payment of $18,250,000 in cash for the benefit of the Class, as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

2.     Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

   *UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007)

**Rules**

   Federal Rule of Civil Procedure 23

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................1

II.  FACTUAL AND PROCEDURAL HISTORY ...................................................3

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL ...........................4

  A.  Legal Standards for Final Approval of Class Action Settlement.........4

  B.  The Rule 23 and Sixth Circuit Factors Support Approval ...................6

    1.  The Class Was Adequately Represented ....................................6

    2.  The Absence of Fraud or Collusion Favors Approval...............8

    3.  The Relief Provided to the Class Is Adequate ...........................9

    4.  The Stage of Proceedings and Amount of Discovery
        Engaged in By the Parties Supports Approval ........................14

    5.  Class Counsel and Lead Plaintiffs Endorse the Settlement......16

    6.  The Reaction of the Class Supports Final Approval ...............17

    7.  Public Interest Favors Approval of the Settlement..................17

    8.  Other Rule 23(e)(2) Factors Support Final Approval..............18

IV.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...............20

V.  THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE
    PROCESS REQUIREMENTS ......................................................................21

VI.  CONCLUSION...........................................................................................23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arledge v. Domino's Pizza, Inc.*,
  No. 3:16-cv-386-WHR, 2018 WL 5023950
  (S.D. Ohio Oct. 17, 2018) .................................................................9

*Armstrong v. Gallia Metro. Hous. Auth.*,
  No. 2:98-CV-373, 2001 WL 1842452
  (S.D. Ohio Apr. 23, 2001) .............................................................16

*Bartell v. LTF Club Operations Co.*,
  No. 2:14-cv-401, 2020 U.S. Dist. LEXIS 229682
  (S.D. Ohio Aug. 7, 2020).................................................................13

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ...........................................17

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)..............................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  No. 15-90038, 2015 WL 10714013
  (5th Cir. Nov. 4, 2015).....................................................................12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  No. 3:02-cv-1152-M, 2018 WL 1942227
  (N.D. Tex. Apr. 25, 2018)................................................................20

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ..........................................................12

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ..........................................................6

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 WL 6619983
  (N.D. Cal. Dec. 18, 2018) .................................................................5

**Page**

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    No. 07-61542-CIV, 2011 WL 1585605
    (S.D. Fla. Apr. 25, 2011),
    *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ...........................................................................12

*In re Broadwing, Inc.*,
    252 F.R.D. 369 (S.D. Ohio 2006)........................................................................18

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................10

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 WL 6209188
    (E.D. Mich. Dec. 13, 2011)......................................................................8, 20, 21

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................................7

*In re Prandin Direct Purchaser Antitrust Litig.*,
    No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473
    (E.D. Mich. Jan. 20, 2015)..................................................................................10

*In re Se. Milk Antitrust Litig.*,
    No. 2:08-MD-1000, 2013 WL 2155379
    (E.D. Tenn. May 17, 2013)..................................................................................17

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011),
    *aff'd*, 838 F.3d 223 (2d Cir. 2016).....................................................................12

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005).................................................................12

*IUE-CWA v. GMC*,
    238 F.R.D. 583 (E.D. Mich. 2006) .....................................................................16

*Karpik v. Huntington Bancshares Inc.*,
    No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641
    (S.D. Ohio Feb. 18, 2021).......................................................................8, 9, 11, 17

Page

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006),
    *aff'd sub nom. Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) ............................................................10

*New York State Tchrs.' Ret. Sys. v. GMC*,
    315 F.R.D. 226 (E.D. Mich. 2016),
    *aff'd sub nom. Marro v. New York State Tchrs'. Ret. Sys.*
    No. 16-1821, 2017 WL 6398014 (6th Cir. 2017)........................*passim*

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
    636 F.3d 235 (6th Cir. 2011) ........................................................11, 17

*Robbins v. Koger Props. Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................12

*Robinson v. Shelby Cnty. Bd. of Educ.*,
    566 F.3d 642 (6th Cir. 2009) ..............................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................18

*UAW v. GMC*,
    497 F.3d 615 (6th Cir. 2007) .....................................................*passim*

*Whitford v. First Nationwide Bank*,
    147 F.R.D. 135 (W.D. Ky. 1992) ....................................................6, 18

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ..............................................................7

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4(a)(4) ...................................................................................1, 20
    §78u-4(a)(7) .................................................................................22, 23

**Page**

Federal Rules of Civil Procedure
  Rule 23 .................................................................................*passim*
  Rule 23(a)................................................................................23
  Rule 23(b)(3)...........................................................................23
  Rule 23(c)(2)(B).............................................................21, 22, 23
  Rule 23(e)...............................................................................1, 5
  Rule 23(e)(1)(B).....................................................................21
  Rule 23(e)(2)..................................................................4, 5, 18
  Rule 23(e)(2)(A) ......................................................................6
  Rule 23(e)(2)(B)........................................................................8
  Rule 23(e)(2)(C).......................................................................9
  Rule 23(e)(2)(C)(ii) ...............................................................18
  Rule 23(e)(2)(C)(iii) ..............................................................18
  Rule 23(e)(2)(C)(iv) ...............................................................18
  Rule 23(e)(2)(D) .....................................................................18
  Rule 23(e)(3)............................................................................5

## SECONDARY AUTHORITIES

Laarni T. Bulan & Laura E. Simmons,
*Cornerstone Research: Securities Class Action Settlements:*
*2020 Review and Analysis* (2021)............................................14

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Ronald E. Wallace and Walter J. Minett ("Lead Plaintiffs" or "Class Representatives") respectfully submit this memorandum in support of their motion for: (i) final approval of the proposed settlement of this securities class action; and (ii) approval of the proposed Plan of Allocation.[1]

## I.    INTRODUCTION

Lead Plaintiffs, through their counsel, have obtained an $18.25 million cash settlement for the benefit of the Class in exchange for the dismissal and full release of all claims brought against Defendants in this Litigation.  As described below and in the Joint Declaration, the Settlement is a very good result for the Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks. In fact, the Settlement represents approximately 30% of the Class's *maximum* estimated recoverable damages, an extremely favorable result when compared to the median securities class action settlement.  *See* Joint Decl., ¶163.

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated April 26, 2021 (the "Stipulation") (ECF No. 211) or in the accompanying Joint Declaration of Ramzi Abadou and Rylan Llorens in Support of: (A) Class Representatives Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (B) Class Counsel's Motion for an Award of Attorneys' Fees, Litigation Costs and Expenses and Awards to Class Representatives Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Joint Declaration" or "Joint Decl."). All citations to "§__," "¶__," and "Ex. __" in this memorandum refer, respectively, to sections in, paragraphs in, and Exhibits to, the Joint Declaration. Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

Lead Plaintiffs' decision to settle the Litigation was well-informed by an extensive investigation, hard-fought litigation by experienced counsel, substantial discovery efforts, and arm's-length negotiations supervised by experienced mediators. While Lead Plaintiffs believe that their claims had merit and that they would ultimately prevail, they also recognize that had the Litigation continued, they faced substantial risks to obtaining any recovery for the Class, let alone a recovery greater than that afforded by the Settlement. Specifically, in addition to the inherent risks related to establishing Defendants' liability, when the Settlement was reached, the parties' cross motions for summary judgment were pending and thus there was the risk that the Court would substantially narrow, if not completely dismiss Lead Plaintiffs' claims before trial.

In light of these considerations, Lead Plaintiffs and Class Counsel believe that the $18.25 million Settlement is eminently fair, reasonable, adequate, easily satisfies the standards of approval under Fed. R. Civ. P. 23, and provides a very favorable result for the Class. The reaction of the Class thus far also supports the Settlement. As discussed below, potential Class Members have been notified of the Settlement in accordance with the Preliminary Approval Order and, to date, only one purported Class Member has filed an objection.[2]  *See* ECF No. 213, PageID.14830-31.

---

[2]   The letter does not establish membership in the Class and does not substantively challenge the Settlement.  Class Counsel will more fully address any objections in

- 2 -

Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members. This Plan was prepared in consultation with Lead Plaintiffs' damages expert and governs how claims will be calculated and, ultimately, how the Net Settlement Fund will be equitably distributed to Authorized Claimants. No objections have been filed to this straightforward method of allocation.

## II.   FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation and Class Counsel's tireless efforts on behalf of the Class (Joint Decl., §III.A through §III.J, inclusive); the negotiations leading to the Settlement (*id*., §III.D and §III.K); and the risks and uncertainties of continued litigation (*id.*, ¶¶11-20, 159-162, 166-167).

---

their upcoming reply papers, due August 16, 2021. *See* ECF No. 212, PageID.14827, ¶21.

## III.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   Legal Standards for Final Approval of Class Action Settlement

Federal Rule of Civil Procedure ("Rule") 23 requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is well settled within the Sixth Circuit that "federal policy favor[s] settlement of class actions." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007). "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'" *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009).

On December 1, 2018, amendments to Rule 23(e)(2) went into effect that provide the Court with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate":

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

- 4 -

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitable relative to each other.

Fed. R. Civ. P. 23(e)(2).   The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."   Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure.   "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the [Sixth] Circuit's factors and relevant precedent."   *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), ), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).   The Court considered these factors in connection with its consideration of preliminary approval of the Settlement and found that each had been met.   *See* ECF No. 212, PageID.14817-18.

To evaluate the substantive fairness of the settlement, courts in the Sixth Circuit have considered the following factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

- 5 -

These factors should not be applied in a formalistic fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. Courts "'judge the fairness of a proposed compromise,'" "'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement,'" as opposed to deciding the merits of the case or resolving unsettled legal questions. *Id.* at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Likewise, "'[t]he district court enjoys wide discretion in assessing the weight and applicability of these factors.'" *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *New York State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. 2017).

**B.     The Rule 23 and Sixth Circuit Factors Support Approval**

**1.     The Class Was Adequately Represented**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." The Sixth Circuit looks at two criteria to determine whether adequacy is met: the representative must (i) "'have common interests with unnamed members of the class,'" and (ii) be

willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

These requirements have easily been met here.  As the Court found in its Order Overruling Defendants' Objections and Adopting Magistrate Judge Whalen's Report and Recommendation regarding class certification, the Court found that Lead Plaintiffs' claims are typical of and co-extensive with the claims of the Class, and they have no antagonistic interests with respect to the Class as a whole.  (ECF No. 193, PageID.13871-73).  In fact, Lead Plaintiffs have amply demonstrated that they have an interest in obtaining the largest-possible recovery in this Litigation, as do the other absent Class Members.  *Id.*; *see also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").  Additionally, as detailed in their respective declarations, Lead Plaintiffs were highly involved in each stage of the Litigation and worked closely with Class Counsel throughout the pendency of this action to achieve the best possible result for themselves and the Class.[3]

Class Counsel have also adequately represented the Class.  Class Counsel are highly experienced in securities litigation, with long and successful track records

---

[3]    *See also* Declaration of Ronald E. Wallace, ¶¶4-7, 10-11 ("Wallace Decl."); and Declaration of William J. Minett, ¶¶4-7, 10-11 ("Minett Decl."), submitted herewith.

representing investors in cases in courts throughout the country.  *See* Declaration of Ryan A. Llorens Filed on Behalf of Robbins Geller Rudman & Dowd LLP, Ex. G; and Declaration of Ramzi Abadou Filed on Behalf of Kahn Swick & Foti, LLC, Ex. A submitted herewith.  Here, Class Counsel incurred over $833,000 in expenses and expended over 18,200 hours during a span of over five years vigorously pursuing the Litigation.  Joint Decl., §VII.A and B.  Accordingly, this factor is easily satisfied and warrants final approval.  *See UAW*, 497 F.3d at 626 (representation was adequate because class counsel "***was willing to, and indeed did, commit substantial 'resources . . . to represent* the class[ ]**'").

### 2.    The Absence of Fraud or Collusion Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which analyze whether the Settlement was reached at arm's length and without fraud or collusion, also support approval.  "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011).  *See also Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *15 (S.D. Ohio Feb. 18, 2021). "Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery." *Id.*

Here, the proposed Settlement was reached after over five years of litigation, with both sides vigorously advocating their respective positions.  Indeed, the Settlement was reached only after arm's-length negotiations facilitated by two experienced and well-respected mediators Michelle Yoshida of Phillips ADR and former United States District Judge Gerald E. Rosen.  Joint Decl., §III.D and §III.K. The Settlement negotiations were extensive, and included the exchange of multiple briefs, three separate in-person (or *via* Zoom-based videoconference) mediation sessions, then follow-up discussions with the assistance of Judge Rosen.  *Id.*  The Parties' negotiation efforts spanned nearly two years and they ultimately agreed to settle only after Judge Rosen provided a mediator's proposal.  Joint Decl., ¶¶15, 155. As such, the Settlement warrants approval given that the "'participation of an independent mediator [which] virtually insures that the negotiations were conducted at arm's length and without collusion.'"  *See Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

### 3.    The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and other factors.  This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity, expense and likely duration of the litigation; and (ii) the likelihood of success on the merits.  Each of these factors supports approval.

- 9 -

### a.     The Complexity, Expense and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008).  Most class actions are "'inherently complex'" and "'settlement avoids the costs, delays, and multitude of other problems associated with them.'"  *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *2 (E.D. Mich. Jan. 20, 2015).   Indeed, courts have consistently recognized that "'[s]ecurities class actions are often difficult and . . . uncertain.'"  *See, e.g.*, *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves complex issues relating to falsity, scienter, loss causation, and damages.  The case also involves the drug approval process under FDA rules and regulations, which involve technical and complex analysis, necessitating expert testimony and analysis.  Indeed, Class Counsel retained experts to provide reports and deposition testimony regarding these matters, which were contested at summary judgment, and would continue at trial.

Additionally, the case was filed over five years ago.  When the case settled, Defendants and third parties had collectively produced thousands of documents

totaling over 220,000 pages (Joint Decl., ¶10; *id.* at §III.E.1); 26 fact and expert depositions had been taken (*id.* at §III.F); the class had been certified (*id.* at §III.I); expert reports relevant to the merits of the claims had been exchanged (*id.* at §III.G); and cross motions for summary judgment and *Daubert* motions were pending (*id.* at §III.J.1 through §III.J.3, inclusive). Much more remained to be done, including pre-trial preparation, trial, and likely post-trial appeals. *See GMC*, 315 F.R.D. at 236 (approving settlement where further litigation would have been "extensive" and "protracted"). It is likely that this litigation would last several more years. "As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement." *Id.*

### b.   The Likelihood of Success on the Merits

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *Karpik*, 2021 U.S. Dist. LEXIS 38641, at *19 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). In other words, when considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the Settlement. *UAW*, 497 F.3d at 631.

Lead Plaintiffs believe that the evidence establishes that: (i) Defendants' August 17, 2015 statements were objectively false at the time they were made; (ii) those

statements were not protected "forward-looking statements"; and (3) when the truth was ultimately disclosed, Esperion's stock price declined, causing damage to Class Members.  Nevertheless, Lead Plaintiffs are also cognizant of the fact that there was no guarantee that Lead Plaintiffs would prevail at summary judgment or trial.  Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[4]

Here, as detailed in the Joint Declaration, there were numerous potential defenses available to Defendants that could delay, or preclude entirely, any recovery by the Class.  Throughout this Litigation, Defendants have denied, and continue to

---

[4] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on limited issues); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and modifying class definition after intervening change in Supreme Court precedent), *aff'd*, 838 F.3d 223 (2d Cir. 2016); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (setting aside jury verdict in favor of plaintiffs and granting securities defendants' post-trial motion for judgment as a matter of law), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 15-90038, 2015 WL 10714013, at *3 (5th Cir. Nov. 4, 2015) (granting a "third interlocutory appeal in a [securities] case that has remained in the class certification stage for thirteen years," with two successive appeals to the U.S. Supreme Court).

deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. For example, Defendants have challenged whether Lead Plaintiffs could establish the requisite fraudulent intent (*i.e.*, lack of motive and the absence of "red flags"), and the extent to which the losses suffered by investors were the result of the allegedly misleading disclosures regarding the necessity of a CVOT prior to approval, or instead, some other reason. Joint Decl., §III.J.1 and §III.J.2. Defendants have argued that they disclosed multiple categories of information in their September 28 press release which resulted in the stock price drop, and that Class Counsel had not disaggregated these "confounding factors." *Id.*, at §III.J.3. Class Counsel were fully informed of the strengths and weaknesses of Lead Plaintiffs' case, including the many complicated and nuanced legal and economic issues that would have to be resolved in the Lead Plaintiffs' favor in order to achieve a successful result. In short, continued litigation would be hard fought, expensive, subject to significant expert testimony, and a positive result was far from assured. *See Bartell v. LTF Club Operations Co.*, No. 2:14-cv-401, 2020 U.S. Dist. LEXIS 229682, at *11-*12 (S.D. Ohio Aug. 7, 2020) ("In summary, continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as to the merits of Plaintiff's claims creates substantial risk to the Class. When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.").

- 13 -

Despite these risks, Lead Plaintiffs obtained a very favorable recovery.  The Settlement represents approximately 30% of the estimated **maximum** damages suffered by Class Members.  Joint Decl., ¶163.  This result far exceeds the median percentage recovery in securities class actions according to data from NERA.  *See, e.g.*, Laarni T. Bulan & Laura E. Simmons, *Cornerstone Research: Securities Class Action Settlements: 2020 Review and Analysis*, at 6 (2021) (showing the median settlement percentage for similarly sized cases in 2020 was only 5.3%).[5]  Indeed, courts in this Circuit have routinely approved settlements with similar or smaller recoveries.  *See, e.g.*, *GMC*, 315 F.R.D. at 237 (compiling cases approving settlements representing as little as 3.8% of total damages).  Accordingly, the proposed Settlement is a very good result for the Class and is certainly within the range of what would be determined to be fair, reasonable, and adequate.

### 4. The Stage of Proceedings and Amount of Discovery Engaged in By the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *GMC*, 315 F.R.D. at 236.  Here, Class Counsel undoubtedly had a thorough understanding of the strengths and

---

[5]  *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (last accessed June 18, 2021).

weaknesses of Lead Plaintiffs' claims.  During the Litigation, Class Counsel had, among other things:

- conducted an in-depth investigation, including a review and analysis of SEC filings, conference call transcripts, press releases, and financial analyst research reports concerning the Company;

- filed a detailed 35- page Amended Complaint based on the investigation (*see* ECF No. 29);

- successfully defeated Defendants' motion to dismiss, including an appeal to the Sixth Circuit Court of Appeal (*see* ECF Nos. 46 and 47);

- responded to discovery propounded by Defendants;

- successfully obtained class certification (*see* ECF Nos. 152 and 193);

- prepared and served document requests to Defendants and subpoenas to third parties;

- reviewed and analyzed approximately 220,000 pages of documents produced by Defendants and key third parties;

- took or defended twenty-six fact and expert depositions;

- met and conferred with Defendants and third parties regarding discovery;

- consulted with Lead Plaintiffs' market efficiency, damages and FDA experts;

- moved for partial summary judgment (*see* ECF Nos. 173 through 178, inclusive, and ECF No. 195);

- opposed Defendants' motion for summary judgment (*see* ECF No. 187);

- responded to Defendants' *Daubert* motion (*see* ECF No. 190); and

- engaged in settlement negotiations with two experienced mediators over the course of nearly two years.

*See generally* Joint Decl., at §III and §IV.  There can be no question that by the time the Settlement was reached, Lead Plaintiffs and Class Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement," *GMC*, 315 F.R.D. at 237, and reached the well-informed decision to enter into this Settlement.  Accordingly, this factor supports approval of the Settlement.

### 5.    Class Counsel and Lead Plaintiffs Endorse the Settlement

In assessing the fairness of a proposed settlement, courts consider Class Counsel's endorsement of the Settlement, which "is entitled to significant deference." *Id.* at 238; *accord IUE-CWA v. GMC*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'").  This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of plaintiff's case and the probable course of future litigation.  *See Armstrong v. Gallia Metro. Hous. Auth.*, No. 2:98-CV-373, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 23, 2001).

Here, as a result of the negotiation process, Class Counsel carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; and the risk, expense, and duration of continued litigation.  Based on this consideration,

Class Counsel concluded that the Settlement is not only fair and reasonable but is a highly favorable result for the Class.  Joint Decl., ¶¶1-20; *Karpik*, 2021 U.S. Dist. LEXIS 38641, at *21.  Likewise, Lead Plaintiffs approve the Settlement.  *See* Wallace Decl., ¶10; Minett Decl., ¶10.  "Their support also favors approval." *Karpik*, 2021 U.S. Dist. LEXIS at 38641, at *22.  Accordingly, this factor supports final approval.

### 6. The Reaction of the Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class.  *Poplar Creek*, 636 F.3d at 244; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements."  *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2013). Here, as detailed *infra*, Section VI, as of July 16, 2021, the Claims Administrator has disseminated over 13,000 Notices to potential Class Members.  To date not one Class Member has objected to the substantive fairness of the Settlement.[6]  Thus, this factor favors approval of the Settlement.

### 7. Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal

---

[6] *See* n.2, *supra*.

prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'" *GMC*, 315 F.R.D. at 241-42.   The Settlement also furthers public policy by providing a substantial recovery to the Class, and ends this protracted Litigation, thereby conserving judicial resources.  *See In re Broadwing, Inc.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8.   Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-members claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members.   *See* Rule 23(e)(2)(C)(ii), (iii), and (iv); Rule 23(e)(2)(D).   Each of these additional considerations also supports final approval of the Settlement.

*First*, the method for processing Class Members' claims and distributing relief to eligible claimants are well-established, effective procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement

Fund.  Here, the Court-appointed Claims Administrator will review and process the claims under the guidance of Class Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the proposed Plan of Allocation), *see infra* Section IV.  *See, e.g.*, *GMC*, 315 F.R.D. at 233-34, 245 (approving settlement with a nearly identical distribution process).[7]

**Second**, as discussed in the accompanying fee and expense memorandum, Class Counsel are applying for an award of 32.5% of the common fund fee award as compensation for the services they rendered on behalf of the Class, as well as payment of litigation costs and expenses.  The proposed attorneys' fees are reasonable in light of the work performed and the results obtained, and a 32.5% award is consistent with attorneys' fee percentages that courts have approved in similar cases.  *See, e.g.*, *Indiana State District Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc., et al.*, No. 2:06-cv-00026, PageID.16147 (E.D. Ky. 2019) (awarding 33% of a $20 million recovery).[8]  Notably, approval of the requested fees is

---

[7]  Though the letter filed by the purported Class Member appears to challenge the claims filing process, it is necessary to ensure that only those Class Members who have established losses recover from the Settlement Fund.

[8]  Additional jurisprudence supporting this award included in Class Counsel and Class Representatives' Memorandum of Law in Support of Their Motion for (1) an Award of Attorneys' Fees and Expenses; and (2) Class Representatives'

separate from consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees. *See* Stipulation, ECF No. 211, PageID.14723, ¶6.4.

**Third**, the Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Class Members exclude themselves. Stipulation, ECF No. 211, PageID.14724-25, ¶7.3. This type of agreement is a standard provision in securities class action settlements and has no negative impact on the fairness of the Settlement. *See Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

**Fourth**, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of the Plan of Allocation requires that it is fair, reasonable, and adequate. *See, e.g.*, *Packaged Ice*, 2011 WL 6209188, at *15. "'Courts generally

---

Reimbursement of Costs and Expenses Pursuant to 15 U.S.C. §78u-4(a)(4), submitted herewith.

consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'" *Id.*

Here, the proposed Plan of Allocation, which was developed in consultation with Lead Plaintiffs' damages expert, is fair, reasonable and adequate.  The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their recognized loss.  Joint Decl., §VI.  The Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the Exchange Act.  Moreover, the Plan of Allocation was disclosed in the Notice mailed to potential Class Members and nominees and, to date, there have been no objections to the Plan of Allocation.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶4-11; *see also* Joint Decl., ¶176.  Thus, the Plan of Allocation is fair and reasonable.

## V.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   In addition to the requirements of Rule 23, the

Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement.  In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA.  *See* 15 U.S.C. §78u-4(a)(7).  A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'"  *Fidel*, 534 F.3d at 514.  The notice program utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated over 13,000 copies of the Notice and Proof of Claim and Release via first-class mail to potential members of the Class and nominees.  *See* Murray Decl., ¶¶4-11, submitted herewith.  The Claims Administrator also caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *Business Wire*.  *Id.*, ¶12.  In addition, a dedicated toll-free telephone number and website were established to assist potential Class Members with inquiries regarding the Litigation, the Settlement, and the claims process.  *Id.*, ¶¶13-14.

The Notice provides Class Members, among other things, (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average recovery per affected Esperion share; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are

proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or the maximum attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Class Members; and (x) a way of obtaining additional information about the Litigation, by contacting Class Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7). The Notice also provides recipients with information on how to submit a Proof of Claim and Release. *See* Murray Decl., Ex. A.

Lead Plaintiffs and their counsel have satisfied all of the elements of the notice plan approved by the Court. *See generally* Murray Decl. Accordingly, the notice program implemented in this Litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also GMC*, 315 F.R.D. at 242 (finding similar notice program "satisfied Rule 23's notice requirement").

## VI.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (i) approve the Settlement as fair, reasonable, and adequate; and (ii) approve the Plan of Allocation as fair and reasonable pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

DATED:  July 19, 2021          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP

s/Ellen Gusikoff Stewart
_____
Ellen Gusikoff Stewart
Ryan A. Llorens
Kevin A. Lavelle
Francisco J. Mejia
Ting H. Liu
655 West Broadway, Suite 1900
San Diego, CA  92101
T:  (619) 231-1058
elleng@rgrdlaw.com
ryanl@rgrdlaw.com
klavelle@rgrdlaw.com
fmejia@rgrdlaw.com
tliu@rgrdlaw.com

KAHN SWICK & FOTI, LLC
Lewis S. Kahn
Melinda A. Nicholson
Alexander Burns
Alayne Gobeille
Morgan M. Embleton
1100 Poydras Street, Suite 3200
New Orleans, LA  70163
T:  (504) 455-1400
lewis.kahn@ksfcounsel.com
melinda.nicholson@ksfcounsel.com
alexander.burns@ksfcounsel.com
alayne.gobeille@ksfcounsel.com
morgan.embleton@ksfcounsel.com

KAHN SWICK & FOTI, LLP
Ramzi Abadou
580 California Street, Suite 1200
San Francisco, CA 94104
T:  (415) 459-6900
ramzi.abadou@ksfcounsel.com

*Class Counsel for Lead Plaintiffs*

THE MILLER LAW FIRM, P.C.
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
Angela L. Baldwin (P81565)
William Kalas (P82113)
950 West University Drive, Suite 300
Rochester, MI  48307
T:  (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com
alb@millerlawpc.com
wk@millerlawpc.com

*Local Counsel*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 19, 2021, I authorized the electronic

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and

I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

the non-CM/ECF participants indicated on the attached Manual Notice List.

s/Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  elleng@rgrdlaw.com

## Mailing Information for a Case 2:16-cv-10089-AJT-RSW Dougherty v. Esperion Therapeutics, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  Ramzi.Abadou@ksfcounsel.com,Ashley.Errington@ksfcounsel.com

- **Sharon S. Almonrode**
  ssa@millerlawpc.com,aad@ecf.courtdrive.com,ssa@ecf.courtdrive.com,aad@millerlawpc.com,leb@millerlawpc.com,leb@ecf.courtdrive.com

- **Katherine M. Anthony**
  KAnthony@goodwinprocter.com

- **Angela L. Baldwin**
  alb@millerlawpc.com,dma@courtdrive.ecf,dma@millerlawpc.com

- **Deborah S. Birnbach**
  dbirnbach@goodwinprocter.com

- **Matthew J. Boettcher**
  mboettcher@plunkettcooney.com,mkisell@plunkettcooney.com

- **Austin P. Brane**
  abrane@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander Louis Burns**
  alexander.burns@ksfcounsel.com

- **Patrick E. Cafferty**
  PCafferty@CaffertyClobes.com,docket@caffertyclobes.com

- **Morgan Michelle Embleton**
  morgan.embleton@ksfcounsel.com

- **Alayne Karen Gobeille**
  Alayne.Gobeille@ksfcounsel.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **William Kalas**
  wk@millerlawpc.com,lkb@ecf.courtdrive.com,wk@ecf.courtdrive.com,lkb@millerlawpc.com

- **Thomas L. Laughlin , IV**
  tlaughlin@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Kevin A. Lavelle**
  KLavelle@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Dennis A. Lienhardt**
  dal@millerlawpc.com,lkb@ecf.courtdrive.com,lkb@millerlawpc.com,dal@ecf.courtdrive.com

- **Ting H. Liu**
  TLiu@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ryan A. Llorens**
  ryanl@rgrdlaw.com,RyanL@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **Katherine McKenney**
  kmckenney@goodwinprocter.com

- **Francisco J. Mejia**
  fmejia@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Eric A. Michaels**
  emichaels@saretsky.com,mlamberti@saretsky.com,smauch@saretsky.com,ajohnson@saretsky.com,kfiema@saretsky.com

- **E. Powell Miller**
  epm@millerlawpc.com,aad@miller.law,aad@ecf.courtdrive.com

- **Morgan Mordecai**
  mmordecai@goodwinprocter.com

- **Melinda A. Nicholson**
  melinda.nicholson@ksfcounsel.com

- **Edmond Prifti**
  eprifti@sachswaldman.com,gkruszewski@sachswaldman.com,cblashill@sachswaldman.com,lpulgini@sachswaldman.com

- **Lisa M. Serra**
  lserra@saretsky.com,nhoenle@saretsky.com,ajohnson@saretsky.com

- **Adam Slutsky**
  ASlutsky@goodwinprocter.com,IStearns@goodwinlaw.com

- **Emily Unger**
  EUnger@goodwinlaw.com,GRossman@goodwinlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)